## Barbara Colm v. Claus Colm

[407 A.2d 184]

No. 110-78

Present: Barney, C.J., Daley, Larrow and Billings, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed October 2, 1979

488

*Donald H. Hackel* and *Paul L. Reiber* of *Dick, Hackel & Hull,* Rutland, for Plaintiff

*Bloomer and Bloomer,* Rutland, for Defendant.

**Barney, C.J.** This is a divorce action that was instituted in April 1976 and was finally heard on the merits in January 1978, with the order dated February 27, 1978. The parties had minor children, and the intervening time period produced temporary hearings, motions for further temporary hearings, contempt proceedings, and other interlocutory concerns. Part of the defendant-husband's appeal relates to his efforts to be heard on issues he considered crucial to final disposition of the parties' property and to the measure and enforcement of his support obligations. Also before us are issues relating to the appeal of the merits of the divorce adjudication. For clarity, we will deal first with the matters raised directly by the appeal of the divorce judgment.

The final order dated February 27, 1978, among other things, decreed to the plaintiff-wife certain camp premises in Mt. Holly. This camp was suitable only for summer use, being uninsulated and having only an outside privy. It stands on a lot of about three acres, and the court valued it at about $12,000.00. It had been in the defendant's family, and he spent summers there as a boy. After the marriage the parties resided at the camp when they first came to Vermont in 1956 and were given the camp property as a wedding gift.

■ The defendant contends that the Mt. Holly property should have been given to him, and, if necessary, substitute equivalent assets given to the plaintiff, because the property came from his family. In this connection he claims support from the legislative policy expressed in 15 V.S.A. § 751, which reads:

> In granting a divorce from bed and board, or an absolute divorce, or a decree annulling a marriage, upon petition of either party, the court shall decree such disposition of the property owned by the parties separately, jointly, or by the entirety, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they shall be left by such divorce, to the party through whom the property was acquired and to the burdens imposed upon it for the benefit of the children. Such decree when affecting title to real estate shall be recorded in the land records of the town wherein such real estate is situated and shall be effective to convey or encumber the title to such real estate as indicated in such decree, subject to all prior encumbrances.

The plaintiff points out that if "the party through whom the property was acquired" refers to acquisition by a party to the marriage, then the property in Mt. Holly was acquired jointly by husband and wife as a gift from his parents. To so narrowly and literally construe the statute may well do violence to its underlying purpose.

■ Property may be owned by either one of the parties prior to marriage, and brought to the conjugal partnership. Clearly, the statutory purpose is directed to such a situation. But the matter before us is different. The property was conveyed to the couple after marriage and was clearly not the property of either husband or wife before marriage so as to come to the marriage from one party or the other.

There is no question but what the husband's family was the source of the wedding gift, and that the husband had an affection for that camp running back to childhood experiences. Certainly it would be proper for the court to "have regard" for the history of the property even without statutory

direction. But it does seem as though the statute is directed more strongly at owned property brought to the marriage by one of the parties, in the interest of moving toward restoring such property interests as they were divided between the parties before marriage.

■ Even more important, the statute instructs the judge to have regard for the source of the property, not as the single, or by any means governing, consideration in decreeing the property. It also subjects it to concerns about the respective merits of the parties, to the condition in which each will be left by the divorce, to the burdens imposed for the benefit of the children, as well as general justice and equity. In the face of all these concerns the fact that the property was decreed to a party not one through whom the property was acquired is not an automatic demonstration of disregard of the statute. *Culver* v. *Culver*, 133 Vt. 191, 193–94, 332 A.2d 799 (1975). The discretion accorded the court is wide, not to be overturned without a showing of abuse or withholding of that discretion. *LaFarr* v. *LaFarr*, 132 Vt. 191, 193, 315 A.2d 235 (1974). No such showing has been made.

The defendant-husband attacks the support order for each of his three children in the amount of $25.00 per week per child. His contention is that the trial court made no finding that $75.00 a week was required for the support and maintenance of the children, or that the resources of the defendant were sufficient to pay such an amount.

The evidence in the case revealed that at the time the divorce action was begun, the defendant was employed by a bank as manager of one of its branches with a weekly income of $261.00. In December of 1976 he was discharged from his job, and from then on had no steady employment. He did draw unemployment compensation for the appropriate period. While employed at the bank he paid support for the children under a temporary order, but ceased doing so when he lost his job.

■ The determination of the amount of support appropriate to the children derives from the testimony of the defendant. He acknowledged that he had an obligation to provide support. In response to an inquiry as to the appropriate amount, he spoke of the figure of twenty-five dollars

per week per child. It is not for him to complain that the trial court found his estimate both reasonable and acceptable.

The issue of the defendant's ability to pay is also raised. There are substantial assets to be finally distributed between the parties which presumably represent a potential source of money from which provision for the children can come. The defendant referred to this in his testimony. His evidence also contained a complaint that there was no need for his wife to turn to the local Lion's Club for children's glasses since in his phrase, "We are not poverty struck." Yet he is before this Court arguing that he cannot furnish support for his children.

 Our cases hold that ability to pay must be established before punishment for contempt may be imposed. *Condosta* v. *Condosta*, 134 Vt. 381, 383, 359 A.2d 658 (1976). This limitation has been held to be a protection to a defendant whose ability to pay the amount assigned as required for his children's support is clouded by a decline in earnings. The court may determine that the reduction is temporary, or may perhaps find it to be deliberately contrived. *Harrigan* v. *Harrigan*, 135 Vt. 249, 251, 373 A.2d 550 (1977); *Romano* v. *Romano*, 133 Vt. 314, 315–16, 340 A.2d 63 (1975). There is no doubt that should the record demonstrate an unsupportable result, this Court is justified in remanding for clarification and supporting findings. *Cleary* v. *Cleary*, 134 Vt. 181, 182, 353 A.2d 334 (1976). But where the evidence sufficiently shows not only resources but capacity and ability in the defendant at a level to justify the support order in the amount ordered, this Court will let it stand as within that wide discretion in such matters the trial court possesses. *Boone* v. *Boone*, 134 Vt. 128, 131, 353 A.2d 332 (1976); *Harrigan* v. *Harrigan, supra*, 135 Vt. at 251, 373 A.2d 550. The provisions of the decree providing for child support are sustained.

 The defendant attacks the determination, in a contempt proceeding, of $4,225.00 of arrearages based on a temporary order, but imported into the final order as a charge against amounts adjudged due the defendant. The proceeding is defective, since no evaluation of the defendant's ability

to pay was made as required by *Spabile* v. *Hunt,* 134 Vt. 332, 335–36, 360 A.2d 51 (1976). In fact, it appears that when the circumstances of the defendant were brought to the attention of the lower court, the temporary order was reduced from $162.50 to $25.00 per week. This determination, through no fault of the defendant, was made a year after the defendant sought, by motion, to bring his reduced circumstances before the trial court. Taking these circumstances together, this Court holds it improper to punish the defendant for failure to carry out payments not possible with his means by charging that amount against his share of the assets of the parties. The plaintiff is entitled to have the benefit of a valid level of support payments for that period and be so credited in the division of the property. This requires a reexamination and appropriate findings by the trial court.

■ In connection with one of the several hearings had in this case the defendant protests the action of the trial court in changing the date of a hearing on a motion for contempt. V.R.C.P. 80(j) provides for personal service of a motion for contempt on the defendant personally. That was done, with a notification of hearing to be held on August 14, 1978. The trial court then ordered the matter on for hearing at an earlier date, over the objections of the defendant, without carrying out the requirements of V.R.C.P. 80(j). We hold that, although the hearing date, once set by service, may be subject to continuance in proper form as in any other litigation, the notice of hearing precludes any acceleration of the date of hearing without the consent of the parties. Notice is of the essence, and proceedings for modification or enforcement of a divorce judgment are to be commenced with the formalities of service usually associated with the beginning of a law suit, all as prescribed by V.R.C.P. 80(j).

■ One of the temporary orders filed in this case ordered that certain funds of the parties held in escrow be dedicated to the retirement of certain debts. The final decree amended the disposition of these escrow funds. The defendant inquires as to whether or not the creditors set out in the first order relating to the escrowed funds acquired thereby any interest in that particular money. The short answer is that they did not.

It was proper for the trial court, in the final order, to make other disposition of those unexpended escrowed funds, and to make new and different orders based on the facts and circumstances of the parties as they then appeared, as to responsibility for the debts of the parties still outstanding. The trial court's decision reflected only, as between the parties, which of them was under a duty to save the other harmless from certain debts. The creditors acquired no separate enforceable interest therefrom.

As the last issue we now deal with the first issue raised by the defendant's brief. He raises it under the general rubric of due process, or, more properly, its denial. It was left to this point in the opinion because, by and large, it is associated with hearings or lack of them on issues raised by temporary orders and petitions for contempt. The difficulties the defendant encountered cannot be attributed to the plaintiff or laid at the door of adversary procedure. The failing must be accepted by the court system itself.

The record is dismal. The issues involved were heard by five different presiding judges, and the defendant's efforts to get motions heard were either summarily denied without hearing or order or left unattended for periods of up to a year. The defendant sought unsuccessfully to bring to the attention of the trial court, in a timely manner, such matters as his loss of employment, the possibility of foreclosure of the mortgage on the parties' home and later the fact of foreclosure after it occurred. Although some of these matters are substantively dealt with in the opinion others are beyond recovery. It is the responsibility of this Court, in its administrative capacity, to give the direction necessary to prevent this sort of unfortunate record. The issue is not one of due process, but it certainly is one of disorderly process, which this Court must condemn.

*The judgment order dated February 27, 1978, as amended, is affirmed except as to paragraph (e), subparagraph 6, which is stricken and the issues raised thereby remanded for further proceedings in accordance with the views expressed in the opinion. Should the resolution of these issues so affect the distribution of the marital assets as to require further amendment of the judgment to comply with the standards*

*of 15 V.S.A. § 751, the trial court is authorized to make such amendments for that purpose as commend themselves to its discretion.*