### Robert B. Wheeler v. Madeline J. Wheeler

[444 A.2d 888]

No. 368-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed March 26, 1982

114

*Salmon & Nostrand,* Bellows Falls, for Plaintiff-Appellant.

*Weber, Perra & Gibson,* Brattleboro, for Defendant-Appellee.

**Underwood, J.** Plaintiff appeals from that portion of a final divorce decree which orders him to pay his former wife a total of $100 per week—$60 for alimony and $40 for the support of their 15-year-old son. He claims that it is economically impossible for him to comply with the order and that there is no basis in the evidence to warrant such an order.

The sole issue for determination is whether the trial court ordered the plaintiff to pay more in alimony and child support than he can afford, and thereby abused its discretion. Both parties waived findings of facts. "To determine whether a given result appears supportable, absent findings, this Court will examine the evidence, presuming the trial court to have had it in mind." *Harrigan* v. *Harrigan*, 135 Vt. 249, 250, 373 A.2d 550, 551 (1977).

The parties lived together as husband and wife for 30 years and raised five children. Their youngest son and the defendant have lived in the family home in Bellows Falls since the parties separated in March of 1980. Plaintiff, who lives in South Burlington, works as manager of a leasing company. His salary there was $300 per week at the time of the hearing below, with net earnings of $225 per week. He testified that subtracting living expenses of $190 per week left him only $35 per week remaining for alimony and child support.

He argues that the effect of the court's order is to require him to pay out $65 more a week than he has coming in. Were his salary his only source of income, his argument would be more persuasive. He is, however, the sole shareholder of Wheeler Trucking Corporation, and the sole owner of commercial property in Bellows Falls. Each of these ventures produces income and each has a net equity.

The commercial property, formerly a fire station, is a two-story, brick building which the plaintiff testified is worth $29,500. Subtracting the outstanding mortgage balance of $23,174.01 and a $1,700 personal loan, which the plaintiff used to install an apartment, leaves a net equity of $4,625.99.

Annual rental income totals $6,900. The two upstairs apartments bring in $150 and $175 per month. Two first-floor rentals—one of which is Wheeler Trucking Corporation—pay $125 each per month. Total expenses for the property

are stated as $6,510 a year, leaving an apparent annual net income of $390.

The plaintiff's ownership of both the commercial property and Wheeler Trucking Corporation, however, give him the exclusive right to determine how the financial relationship between the two ventures will be reflected on the books of each. We note, for example, that while Wheeler Trucking Corporation pays less in rent than either of the upstairs tenants, its rent apparently includes electricity, which the upstairs tenants do not get. Similarly, the evidence indicates that the expenses of the plaintiff's commercial property include a payment to Wheeler Trucking Corporation of $642.50 for repair of its door.

■ Given the plaintiff's ability to state the financial interdependence between these two ventures in the way most favorable to his needs, the trial court would not have been amiss in discounting the importance of what the plaintiff stated was the annual income from the commercial property.

We turn next to consider the income potential and the value of the assets of Wheeler Trucking Corporation. The evidence before us includes: the plaintiff's testimony; a single sheet of paper prepared in longhand by the plaintiff, which purports to set out the value of the corporation's assets, the balance due on those assets, and other corporate debts; as well as some schedules of bookkeeping entries attached to plaintiff's answers to defendant's interrogatories.

Plaintiff testified that he had reported a $10,000 business loss on his 1979 corporate tax return, and argued vigorously throughout the hearing below, and to this Court on appeal, that this figure accurately portrayed the corporation's financial health in 1979, and would be an accurate barometer for 1980 as well. That tax return, however, was apparently never introduced into evidence, and we have no step by step series of calculations which allow us to put the stated loss into context.

■ The bald statement that the corporation reported a $10,000 loss on its tax return, in isolation, has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State* v. *Pat-*

*naude,* 140 Vt. 361, 370, 438 A.2d 402, 405 (1981) (quoting Fed. R. Evid. 401). Without more, the stated loss is as likely to reflect the prudent management of a thriving business, which takes full advantage of every available deduction, as it is the woes of a troubled firm with no earnings to shelter. The trial court was therefore justified in not finding the stated loss determinative.

The background evidence available from the record for our review tilts toward the thriving business explanation for the loss. The evidence shows that a large sum was deducted for depreciation, that the plaintiff and the defendant were paid $23,000 as salaries in the year of the reported loss, that investment credits were taken, and that old equipment was about to be paid off. Finally, the plaintiff conceded on cross-examination that the prospects for the business were bright, noting that business had increased to the point where he had purchased a third tractor to keep up with mail being transported from Rutland, Vermont, to Springfield, Massachusetts, under contract with Metromail. This third tractor would add approximately $1,700 in additional gross income per month and $500–$600 net income per month.

The evidence further shows that Wheeler Trucking Corporation has assets comprised of trucks, trailers, and equipment valued at $63,400 with $38,142 still owing, leaving a net equity of $25,258.

Since the evidence sufficiently shows that the plaintiff has the resources, capacity and the ability to pay the amount ordered, this Court will let the award stand as being within the wide discretion the trial court possesses in such matters. *Colm* v. *Colm,* 137 Vt. 487, 492, 407 A.2d 184, 187 (1979). "[L]ittle prejudice can accrue to him in any event from future inability to make the required payments, if that inability proves to be real rather than conjectural [since] [a]n express finding of ability to pay is a prerequisite to punishment for contempt." *Harrigan* v. *Harrigan, supra,* 135 Vt. at 251, 373 A.2d at 552.

*Affirmed.*