## State of Vermont v. Henry Elroy Manning

[446 A.2d 775]

No. 377-80

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed April 6, 1982

*John J. Easton, Jr.*, Attorney General, *Edwin L. Hobson, Jr.*, Assistant Attorney General, and *Sienna Walton*, Law Clerk (On the Brief), Montpelier, and *James D. McKnight*, Orange County State's Attorney, Chelsea, for Plaintiff.

*Andrew B. Crane*, Defender General, *William A. Nelson*, Appellate Defender, and *Jacqueline Majoros*, Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** The defendant was on parole from a rape conviction when he was arrested on February 9, 1980, and charged by information with two counts of attempted sexual assault stemming from an incident in Brookfield five days earlier. He was arraigned on February 11th and pled not guilty to the charges.

The defendant was unable to raise bail and remained in jail. On his motion the bail conditions were reviewed but left intact by the presiding judge. He appealed to this Court and we ordered the Conditions of Release Order altered to strike the requirement of evening and weekend lockup, and to amend the bail bond requirement from $2500 for each offense to "an appropriate bond with good and sufficient sureties." The new conditions were met and the defendant was released on April 15, 1980.

From the time of the defendant's arrest in February to the time of his release in April, a number of matters relating to this case, including pretrial motions for discovery, voir dire, jury sequestration and change of venue, were heard and determined by three different judges sitting at three different times in the District Court in Orange Circuit. A change of venue was granted to the District Court, Rutland Circuit on April 8th, and trial was subsequently scheduled for June **23rd.**

Three pretrial hearings were held following the change of venue. The first, a hearing on the defendant's motion to suppress certain evidence, was presided over by a fourth judge, new to the case. The second, a pretrial conference on June 13th, and the third, a change of plea hearing on June 19th, both came before a fifth judge who was also without any prior involvement.

At the change of plea hearing the defendant notified the presiding judge of his desire to enter a plea of guilty pursuant to a plea agreement with the State. Under that agreement the defendant would plead guilty to one count of attempted sexual assault and the State would dismiss the second count. The parties also had agreed that sentence for the crime would be argued by them, with the State reserving the right to argue for a sentence up to the statutory limit, which in this case was ten years' imprisonment, a fine of $10,000, or both.

The judge questioned the defendant as to his personal background, his understanding of the charges against him, the voluntariness of his plea of guilty, and his awareness of the effect a guilty plea would have on his rights. He then asked the defendant for his version of the facts relating to the charge, and questioned him as he went along on his lack of memory of the actual incident and the extent of his intoxication at the time. The state's attorney was given a chance to add to the defendant's story of what had occurred, and defense counsel was afforded the same opportunity. Defense counsel responded as follows:

> I think the crucial point in this case, and we will elaborate this at the sentencing hearing, and our report for the sentencing hearing is that, despite the sketchiness of his memory, Mr. Manning has concluded, at this time, that he must have been involved in this incident. And his lack of memory led to the problem. He has voluntarily sought help. He has decided to plead guilty in this case; physically knowing, and I think it has been a crucial step between this case and the earlier one [the former rape conviction]; and demonstrates that Mr. Manning is on the road to rehabilitation. And we will elaborate on that at the sentencing hearing.

The Court went on to formally accept the defendant's guilty plea, and entered judgment accordingly.

The matter of sentencing then came up. After some discussion between the judge, defense counsel, and the state's attorney about how much time might be required for the sentencing hearing, a presentence investigation report was ordered and the matter was continued.

The sentencing hearing was in fact not scheduled for almost four months. When it was scheduled, on two days' notice to the parties, it was scheduled before yet another new judge who was unfamiliar with the case. At this point the defendant filed a Motion to Preserve Continuity in Presiding Judge, claiming that his colloquy with the presiding judge at the change of plea hearing, and that judge's complete familiarity with the case file, made him the only judge sufficiently familiar with this case and this defendant to properly handle the sentencing.

Defense counsel argued at hearing that continuity in a presiding judge is an acute need at the sentencing stage. He cited the ABA standards on sentencing procedures in support:

> (a) If guilt was determined after a trial, the judge who presided at the trial should impose the sentence unless there are compelling reasons in a specific case to provide otherwise. To accommodate cases where it becomes necessary for another judge to impose the sentence, a system should be established to acquaint the new judge with what occurred at the trial.
>
> (b) If guilt was determined by plea, it is still desirable that the same judge who accepted the plea impose the sentence. It is recognized, however, that the rotation practices of many courts make it impossible in many instances for the same judge to sit in both capacities. In any event, the judge who imposes sentence should ascertain the facts concerning the plea and the offense.

ABA Standards, Sentencing Alternatives and Procedures, § 5.1. See also Reporter's Notes, V.R.Cr.P. 32(a)(1) (indicating ABA Standards may be used as guidelines in Vermont).

Defense counsel further indicated to the court that he had inquired into the former judge's schedule where he was presently sitting, and that without undue inconvenience the defendant's sentencing could take place before him. This minimal inconvenience, he maintained, balanced against the strong policy favoring continuity, the complexity of sentencing in this particular case, and the new judge's total unfamiliarity with the case or the defendant, required that the motion be granted.

The State strongly opposed the motion. It claimed that both the rotation system itself and the ABA standard contemplated that a lack of continuity would often be the case and that the standard expressly recognized that where guilt was determined by plea the need for continuity was less strong, and was often outweighed by other considerations if appropriate safeguards were followed. The state's attorney also stated that a scheduling change in this case would cause great inconvenience to the victim's family, who wanted to attend the sentencing.

The sentencing judge stated that although the previous judge was willing to preside over the sentencing, he had also said that he did not feel "married" to the case, and that any judge could do it. The sentencing judge then denied the Motion to Preserve Continuity and, after taking time to review the file, convened the sentencing hearing.

As might have been anticipated, the issue of what sentence should be- imposed was highly contested. After providing a factual basis for the court's edification, the state's attorney noted the defendant's twenty-five year record of increasingly serious crimes and argued for a maximum sentence of 9 to 10 years to protect the public from his repeated crimes of violence, and to serve as a deterrent to others who would engage in similar behavior. Defense counsel emphasized the need for rehabilitation of the defendant, urging that he had already voluntarily sought help, quit drinking, and commenced long-term psychotherapy. Three witnesses were called. The defendant's probation and parole officer endorsed his presentence investigation report, which recommended a short period of incarceration, three to six months, to be served on weekends and followed by release into the community with strict con-

trols, including attendance at Alcoholic's Anonymous meetings and continued psychotherapy. Two mental health professionals who had experience working with alcoholic sex offenders and had worked with the defendant supported the presentence report recommendation.

Sentence was rendered at the end of the hearing, immediately following this testimony, and the defendant was given a term of nine to ten years, six years to serve.

On appeal, the defendant continues to maintain that he was entitled to have the same judge who took his guilty plea sentence him. He claims that he expected as much when he entered his guilty plea, and that this expectation was reasonable. He cites *People* v. *Arbuckle*, 22 Cal. 3d 749, 756–57, 587 P.2d 220, 224–25, 150 Cal. Rptr. 778, 782–83 (1978), for the proposition that "whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge."

█ While we have no quarrel with either the ABA standards or the principle enunciated in *Arbuckle*, we find neither was violated by the decision below. The standard was followed in both letter and spirit, and there is no evidence before us that sentencing discretion was retained by the judge who took the plea. This is not to say that the notion of a succession of judges, such as took place in this case, is favored—or even approved as a policy. See *Colm* v. *Colm*, 137 Vt. 487, 494, 407 A.2d 184, 188 (1979).

█ The ABA standards on continuity of presiding judges for sentencing are founded on the concern that a judge who imposes a sentence should be familiar enough with the defendant and the case to make a fair and appropriate disposition. Where guilt has been determined by trial the need for continuity is greater, for the judge who presided there has taken evidence and heard witnesses and formed an impression of the case. But the standards reflect the fact that a different situation obtains where guilt has been determined by plea, and a new sentencing judge, if necessary, can easily bring before the court all of the persons relevant to his decision. In these cases the standards recognize that rotation

systems may interrupt continuity with little damage done; so long as the judge who does the sentencing takes care to place himself in as good a position as the original judge who took the plea was in.

Here, the sentencing judge had the judge who presided over the plea change contacted by the court clerk to ascertain whether he felt there was a special need for continuity in this case. Having been assured that no such need was felt, the sentencing judge indicated that if he decided to go ahead with sentencing himself he would want a lengthy factual basis presented to him, and would still, in all probability, want to take more than the ordinary amount of time reading the presentence report since he had not presided at the change of plea hearing or at any trial.

Once the sentencing judge had definitely decided to go ahead with the sentencing hearing, he announced that at the hearing he would allow both attorneys to comment on the evidence if they wished, and, without "any miniature trial going on," would expect yet another factual basis to be provided. Finally, he said, "If I feel inadequate after that, I'll say so."

An entire afternoon was spent on the case. Witnesses testified and arguments of counsel were heard. The defendant had the opportunity to testify and repeat any relevant information he had brought forward at the change of plea hearing, although he chose not to. We find no reason to believe that at the time sentence was rendered the presiding judge was unable to make a fair and appropriate disposition.

The suggestion that the defendant's expectation that the same judge would sentence him was an implied term of his plea bargain is also belied by the record in this case. A plea of guilty is a solemn undertaking, and its legitimacy is protected by our V.R.Cr.P. 11 procedures, which require, among other things, that any agreement regarding the plea be fully disclosed in open court so that all parties are fully aware of its terms. *Creaser v. State*, 139 Vt. 315, 316–17, 427 A.2d 359, 360 (1981).

There is no indication in this case that the defendant's plea of guilty was conditioned on any such expectation, nor will we imply any such condition from the extensive question-

ing which occurred at the change of plea hearing, or from the fact that the judge who presided over that hearing discussed preliminary matters relating to sentencing. The change of plea hearing was scheduled in response to the defendant's prior decision to plead guilty, and only after he, his attorney, and the state's attorney had executed a written plea agreement. The ordering of the presentence investigation report and the attempt to estimate how much time would be required for a sentencing hearing were matters appropriate and necessary at this stage of the proceedings regardless of who was to do the actual sentencing, or when, or where it would occur.

*Judgment affirmed.*