**UNITED STATES of America**

v.

**Michael Anthony PIZZO, Appellant.**

**No. 71–1106.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 16, 1971.

Decided Jan. 18, 1972.

Luke T. Nitti, Newark, N. J., for appellant.

Richard S. Zackin, Asst. U. S. Atty., Newark, N. J. (Herbert J. Stern, U. S. Atty., Theodore Margolis, Asst. U. S. Atty., Newark, N. J., on the brief), for appellee.

Before ADAMS, GANEY and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

Appellant pleaded not guilty in March of 1969 to all four counts of an indictment charging him with selling on three separate occasions and with attempting to sell on another counterfeited $20 Federal Reserve Notes in October of 1968, in Jersey City, New Jersey. On May 12, 1970, he retracted his not guilty plea to Count IV [1] and pleaded guilty to that count at a Rule 11 hearing before District Judge Lawrence A. Whipple. At this hearing he was represented by retained counsel who stated to the court after making the motion for the change of plea: "I have explained to Mr. Pizzo the legal effects of this, and the punishment that this Court may impose upon him."

On November 24, 1970, the appellant was sentenced by District Judge Robert Shaw. The Judge had originally intended to give him an eight year sentence, but instead gave him credit for pre-trial incarceration on another charge and imposed a sentence of seven years. On December 4, 1970, appellant filed his notice of appeal.[2]

*First:* Appellant claims he pleaded guilty to Count IV only on condition that Judge Whipple personally would sentence him, as allegedly Judge Whipple had promised. This claim was not asserted as a ground for his motions for reduction or correction of sentence under Federal Criminal Rule 35 in the dis-

---

1. Count IV charged the appellant with having knowingly attempted to sell approximately two thousand counterfeited $20 Federal Reserve Notes with the intent that they be used as genuine currency in violation of 18 U.S.C. § 473. The indictment, Criminal No. 444-68, was filed on November 22, 1968.

2. By letters dated February 2, and August 19, 1971, the appellant presented motions pursuant to Rule 35 of the Federal Rules of Criminal Procedure to the district court. The denial of these motions by Judge Shaw is not before us.

trict court. However, we will consider this claim as though it had. The transcript of the Rule 11 hearing does not substantiate his claim. It shows that Judge Whipple asked appellant a series of nineteen questions. When he answered, "Yes" to the nineteenth, which was, "All that remains with this Court, if I accept this plea, is to sentence you according to law; right?," the court went on to allow the retraction of the not guilty plea and the entry of a plea of guilty by the appellant. But before the last question was asked, the appellant, in response to the other questions, admitted committing the offense charged in Count IV and that that was the reason why he was pleading guilty; that he knew he was entitled to a trial by jury, and that if the Judge accepted the change of plea, it was the same as if he had been tried before a jury and found guilty; that the maximum punishment for the offense was ten years' imprisonment, a $5,000 fine, or both, and that no one had promised him any leniency with regard to any sentence the Judge might impose. Thus even if Judge Whipple had promised that he would sentence him, he did not plead guilty only on that condition.

**Second:** The appellant also claims that the sentence imposed by Judge Shaw was based on an erroneous assumption or information. Before sentencing him on the charge under Count IV, Judge Shaw read aloud appellant's prior record from a presentence report. That record included no less than eight felony convictions and sentences over an eleven-year span. He then asked the appellant and his counsel if there were any questions about those convictions and sentences, and the appellant replied that there were none. After some colloquy between counsel and the court and the appellant and the court, which will be alluded to later, Judge Shaw said:

"Mr. Pizzo, it seems to me from all the information furnished to me that with respect to the charge in Count IV of this Indictment, that you weren't a small time operator. Anyone who is able to obtain the quantity [2,000] of counterfeit twenty dollar bills you obtained must be pretty close to the engraver . . . It is ordered that you be placed in the custody of the Attorney General of the United States and by him or his accredited representative committed to an appropriate institution for seven years.

"My initial thought was an eight year sentence but I rounded it out, giving you credit for the time spent in custody for which you would not receive administrative credit on this charge. That is the sentence of the Court."

Neither the appellant nor his counsel interposed any objection to the comment made by the Judge before he passed sentence.

He does not dispute the existence of the eight prior convictions read to him by the Judge from the presentence report. He does say, however, that the statement that he was not a small time operator and that he was close to the engraver is based on erroneous information, and now intimates that he should have been shown all or parts of the presentence report before the Judge imposed sentence. We have carefully read that report.[3] We will treat his claim as though it had been made at the sentencing hearing.

The Judge did not state categorically that appellant was a big time operator. He said that from the information furnished to him it *seemed* to him that he was. As the record now stands appellant is barred from asserting that he did not attempt to sell two thousand fake $20 bills. A statement that he had that many bills in his possession at the time of his arrest appears in the presentence report. There is nothing there about him being a big time operator. District

3. This court, by order of April 27, 1971, *requested that the presentence report of appellant* be forwarded to this Court.

judges are more familiar with the frequency of indictments concerning dealings in counterfeited money and the face amounts involved than circuit judges. The term "big time operator" is a relative one, and the placing of a person who deals in the number of fake bills that the appellant was attempting to peddle in that category has not been shown to be an unreasonable one.

The presentence report is also silent about engravers. The Judge did not say that appellant was close to one. His statement was no more than an indication that in his opinion one who deals in the quantity of bills that appellant dealt in must know or deal with the person who is responsible for printing the bills. This is no more than an assumption on the Judge's part, but we cannot say that it is beyond the realm of reason.

■ Since the presentence report contains no information to buttress his claim, appellant was not harmed by the omission of the court to disclose, pursuant to Rule 32(c) (2), Fed.R.Crim.P.,[4] any part of the material contained in it to him.

■ *Third:* Finally, he claims that the sentence imposed was excessive as a result of the Sentencing Judge's prejudice toward him. On July 14, 1970, while he was awaiting sentence, appellant and two others were indicted for both conspiracy and the substantive offense of attempting to obstruct justice by attempts to influence Judge Whipple as to appellant's sentence on Count IV. They were tried on these charges in November of 1970 before Judge Shaw and a jury. The three defendants were exonerated of both charges. Subsequent to receiving the verdict the Trial Judge commented to the jury as follows:

"Now, ladies and gentlemen of the Jury, I realize that you had some difficult problems in this case. I am satisfied that you have applied your intelligent, conscientious judgment. *Whether I would have reached a different result is of no consequence.* Under our law you are the sole judges of the facts, and I am satisfied you approached the discharge of your duty with good conscience and intelligence, that your verdict is a product of that collective judgment.

"Now, ladies and gentlemen, I want to thank you for your patience throughout this trial. I want you to know that I am well aware of the difficult problems that any juror faces when there is such sharp conflict in testimony and the determination must be made as to which witnesses are telling the truth.

"You are discharged from further service on this Jury with the thanks of the Court." (Italics ours.)

The above italicized sentence in the Judge's comment to the jury may, with reason, be interpreted to mean that if the Judge had tried the defendants without the benefit of a jury on these charges he would have found them guilty on at least one of the charges. But even if this interpretation is the correct one, we cannot say on this record that it demonstrates that the Sentencing Judge was so biased toward appellant and that he should have disqualified himself at the subsequent sentencing. Before passing sentence, Judge Shaw stated: "Mr. Pizzo, you have a right to speak for yourself, and I assure you I will listen to anything you tell me and give such consideration to it as I believe it deserves before imposing sentence. Feel free to speak." Then the following colloquy took place:

"DEFENDANT: Yes. Well, your Honor, I have to explain. You know I was on trial before your Honor.

"THE COURT: Yes.

"DEFENDANT: And I was acquitted, which the case itself was a seri-

4. This rule in pertinent part provides: ". . . the court before imposing sentence *may* disclose to the defendant or his counsel *all or part* of the material contained in the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon. . . ." (Emphasis added.)

ous charge and if I was convicted I know I could receive the maximum sentence on both cases because of that case, and I feel I should be given leniency because of the second case that prejudiced me in the first case.

"THE COURT: I can assure you it will not prejudice you. The jury found you not guilty and that is the way I am treating it.

"DEFENDANT: I understand, your Honor.

"THE COURT: You are before me on a counterfeiting charge, and I am not considering any other offense for the purpose of the counterfeiting charge other than your past criminal record.

"DEFENDANT: I understand that. I just hope that the Court don't think about my acquittal—

"THE COURT: No. I have no right to do that, and I am not going to do that. Is there anything else that you want to tell me?

"DEFENDANT: No, sir. Just that—

"THE COURT: Well, the charge on which you entered a plea of guilty is a serious charge and as I have it a plea to Count IV of the Indictment was entered."

Then the court, as indicated earlier under the second claim, went on to impose sentence. Judge Shaw specifically told the appellant that the acquittal of appellant on the conspiracy and the attempting to obstruct justice charges would have no influence on him in his passing sentence regarding the Count IV charge. We find no basis for any reasonable inference, which appellant would like us to draw, that Judge Shaw was prejudiced against appellant. The number of years meted out in the sentence is not an outward manifestation to the contrary. The attempting to sell two thousand spurious $20 bills, which is not a small operation, together with appellant's past record is ample justification for the sentence.

It is to be noted that neither appellant nor his counsel raised any objection at the sentencing hearing to Judge Shaw being the sentencing judge.

The judgment will be affirmed.