STATE of Missouri, Respondent,

v.

Roderick NUNLEY, Appellant.

Roderick NUNLEY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 76981, 77941.

Supreme Court of Missouri,
En Banc.

May 28, 1996.

Rehearing Denied June 25, 1996.

Bernard J. Rhodes, Michael J. Abrams, Charles J. Williams, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Becky Owenson Kilpatrick, Asst. Attorney General, Jefferson City, for Respondent.

WHITE, Judge.

Defendant pleaded guilty to first degree murder, kidnapping, forcible rape and armed criminal action. Defendant was sentenced to death for the murder. Defendant's motions filed pursuant to Rules 29.07 and 24.035 were overruled. This Court has exclusive appellate jurisdiction. *Mo. Const. art. V, § 3.* Affirmed in part, reversed in part and remanded.

## I.

This case comes to the Court for the second time. Defendant was indicted for first degree murder, kidnapping, forcible rape and armed criminal action. The State subsequently filed an information in lieu of indictment charging defendant with the four offenses and as a prior and persistent offender. The prosecutor informed defendant if he pleaded guilty to the charged offenses the State would still seek the death penalty. Defendant's counsel allegedly recommended the plea after inquiring about the reputation of the trial judge. Defendant subsequently pleaded guilty to the four charged offenses without a sentencing recommendation from the State.

During his plea hearing, defendant gave the following version of the crimes. After using drugs, defendant and Michael Taylor stole a car. While driving the car, the two men spotted a fifteen-year old girl waiting for her school bus. Taylor allegedly stated he wanted to steal the girl's purse, and defendant, who was driving, stopped the car. Taylor spoke to the girl and then grabbed her and forced her into the car. Defendant then drove the car to his mother's house. The girl was taken out of the car and forced to crawl down to the basement. Taylor then raped the girl. At some point, defendant gave Taylor some lubricant to facilitate the forced sexual intercourse. After the assault, the two men forced the girl into the trunk of the stolen car and tied her up. After Taylor stated he was afraid the girl would identify him, the two men decided to kill the girl. Defendant retrieved two knives from the kitchen and both men stabbed the girl. Defendant knew the girl was going to die from

her wounds.[1] The men drove to a nearby neighborhood and parked the car, leaving the girl in the trunk. Defendant gave a video-taped confession to police.

The trial judge conducted a sentencing hearing and subsequently sentenced defendant to death for the murder count. The judge also sentenced defendant to consecutive terms of fifteen years for the kidnapping count, life for the forcible rape count and ten years for the armed criminal action count. The same day the judge sentenced defendant, he also sentenced Michael Taylor to death.

Defendant filed a *pro se* Rule 24.035 motion for post-conviction relief. The trial judge appointed counsel to represent defendant. At some point prior to the filing of an amended 24.035 motion, the trial judge learned there was an allegation the judge had been drinking alcohol the day of defendant's sentencing. The trial judge, a member of the sixteenth judicial circuit, then entered an order recusing himself. Defendant filed an amended 24.035 motion alleging, in part, the trial judge had been drinking during the sentencing hearing and the day defendant was sentenced. On October 28, 1991, Judge William Mauer of the sixteenth circuit recused from the case. The same day the acting presiding judge of the sixteenth circuit issued an order, which recused all judges from the sixteenth circuit and requested the Chief Justice of this Court to appoint a judge.

The Chief Justice of this Court then entered an order transferring Judge Dierker, of the twenty-second judicial circuit, to the sixteenth circuit to hear the matter. After an evidentiary hearing, Judge Dierker denied defendant's 24.035 motion. Defendant then appealed to this Court, raising fourteen points. This Court entered a summary order vacating the judgment and remanding for a new penalty hearing, imposition of sentence and entry of new judgment.

Defendant subsequently filed a motion to withdraw his guilty plea pursuant to Rule 29.07(d). Judge O'Malley, of the sixteenth circuit, denied this motion. Defendant filed a motion for reconsideration of the denial of his 29.07 motion or in the alternative a request for jury sentencing. Judge O'Malley also denied this motion.

On March 30, 1994, defendant filed with Judge O'Malley a notice of writ of prohibition or mandamus seeking to prohibit Judge O'Malley from proceeding with the sentencing hearing. In this notice, defendant argued he was entitled to withdraw his plea because he would not be sentenced by the judge to whom he pleaded guilty. This argument was not raised in the 29.07 motion.

On March 31, 1994, Judge O'Malley, the judge hearing Taylor's case and defendant's counsel met to discuss the October 28, 1991, order recusing all judges from the sixteenth circuit and this Court's order transferring Judge Dierker. The State was not present at the meeting and a record was not made. The same day the then Chief Justice of this Court issued an order transferring Judge Webber, of the first judicial circuit, to hear the cases of defendant and Michael Taylor. Judge Webber notified defendant's counsel he would be in Division 8 of the sixteenth circuit on April 4, 1994, for pre-trial conference and to hear any scheduled matters.

On April 4, 1994, Judge Webber, defendant and his counsel appeared at the appointed hour. Before the pre-trial conference with Judge Webber began, Judge O'Malley took the bench. Judge O'Malley stated he never agreed to recuse, he had not seen the order transferring Judge Webber and he wanted to hear argument from the State regarding the recusal issue. Defendant then made a motion for Judge O'Malley to recuse. After hearing arguments from the parties, Judge O'Malley denied the motion. On April 5, 1994, the then Chief Justice of this Court issued an order that rescinded the March 31, 1994, order transferring Judge Webber.

---

**1.** The former county medical examiner testified the victim was stabbed ten times and she died approximately thirty minutes later.

After a sentencing hearing, Judge O'Malley sentenced defendant to death for the murder count. Judge O'Malley also sentenced defendant to consecutive terms of fifteen years for the kidnapping count and life imprisonment for each count of forcible rape and armed criminal action. Defendant filed a *pro se* and amended Rule 24.035 motion. Judge O'Malley overruled this motion after an evidentiary hearing. This appeal followed.

## II.

Defendant argues in his first point Judge O'Malley erred by not recusing himself.[2] Defendant first contends the order by the acting presiding judge of the sixteenth circuit recusing all sixteenth circuit judges and order by this Court transferring Judge Webber mandates Judge O'Malley's recusal.

■ Defendant relies on the principle that has been stated as after disqualification a trial judge loses or lacks "jurisdiction." *State ex rel. Carver v. Whipple*, 608 S.W.2d 410, 412 (Mo. banc 1980). The State first contends "jurisdiction" is not the issue but rather the issue is whether Judge O'Malley committed "error" by hearing the case. The State suggests defendant's framing of the argument in terms of "jurisdiction" justifies summarily rejecting defendant's argument. Jurisdiction connotes the power to decide a case on the merits. *Wiglesworth v. Wyrick*, 531 S.W.2d 713, 717 (Mo. banc 1976). This is the issue raised by defendant's argument and the State's contention fails.

Defendant first relies on the October 28, 1991, recusal order entered by the acting presiding judge of the sixteenth circuit. The order provides, in part, "Now on this 28th day of October, 1991, pursuant to Section 478.240 RSMo. and Local Court Rules, all of the judges of the Sixteenth Judicial Circuit are recused from the above captioned cause and the Chief Justice of the Supreme Court is requested to appoint a qualified Circuit Judge to hear and rule all issues pending or

which may hereafter be raised." Defendant relies on the last portion of the quoted language, "issues ... which may hereafter be raised."

■ The initial inquiry is whether the acting presiding judge of the sixteenth circuit had the authority to enter an order recusing all judges from the circuit. Section 478.240.2 gives the presiding judge of a circuit the authority to assign judges to certain cases or divisions. The statute does not specifically provide a presiding judge with the authority to disqualify other judges from hearing a certain case. The authority to ask this Court to transfer a judge is necessary if, for example, all judges within a particular circuit are recused. But whether a presiding judge can disqualify other judges presents a different question. The local rules of the sixteenth circuit also do not provide authority for the presiding judge's order. There are no provisions in either the statutes or rules adopted by this Court that authorize the order at issue here. *See State v. Erickson*, 793 S.W.2d 377, 380 (Mo.App.1990).

■ "A disqualifying bias and prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his participation in a case." *State v. Hunter*, 840 S.W.2d 850, 866 (Mo. banc 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). Given the definition of a disqualifying bias and prejudice, a particular judge is in the best position to determine if recusal is necessary. The circumstances affecting whether recusal is necessary may vary for different judges within a circuit. Here, Judge O'Malley clearly stated he never agreed to recuse and when the alcohol allegation arose he was serving in the juvenile division in the sixteenth circuit. Judge O'Malley also indicated his familiarity with the alcohol allegation was limited to information he read in the newspaper and he did not know much about the "goings on." Permitting individual judges to determine if there exists a disqualifying bias and prejudice does

**2.** To avoid confusion, Judge O'Malley will be referred to by name.

not foreclose the possibility an entire circuit could be disqualified. But, subject to appellate review, the determination regarding bias or prejudice is best left to the particular judge.

■ The lack of authority for a presiding judge to disqualify an entire circuit does not leave a litigant without a remedy. If a litigant is facing a prejudiced or biased judge, due process permits the litigant to remove the judge. *Thomas v. State*, 808 S.W.2d 364, 367 (Mo. banc 1991). However, absent agreement by all judges of a circuit, it is improper for a presiding judge to disqualify all judges in a circuit. Defendant cannot rely on an order that the acting presiding judge had no authority to issue.

■ Defendant also relies on the March 31, 1994, order by the then Chief Justice of this Court transferring Judge Webber to hear both Michael Taylor's and defendant's cases. However, this order was rescinded on April 5, 1994; therefore, defendant's reliance on this order is misplaced. Prior to March 31, 1994, many of the recusal orders and other motions pertained to both defendant and Michael Taylor. There is some confusion regarding the circumstances of the March 31st meeting and no record was made of this meeting. Apparently, the judge hearing Michael Taylor's case indicated during the meeting he probably would recuse. On April 4th, Judge O'Malley refused to recuse. After being fully apprised of the circumstances, the March 31st order was rescinded to permit the entire Court to consider the issue if raised. The two orders relied on by defendant do not mandate Judge O'Malley's disqualification.

■ Defendant also argues in his first point the entire sixteenth circuit, including Judge O'Malley, should be recused because they cannot be impartial. Defendant contends Judge O'Malley's failure to recuse violates his constitutional rights and the canons of judicial conduct.

■ The United States and Missouri Constitutions guarantee a criminal defendant an impartial tribunal. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *State v. Wise*, 879 S.W.2d 494, 523 (Mo. banc 1994), *cert. denied*, — U.S. —, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995); *Wilson v. State*, 626 S.W.2d 243, 248 (Mo. banc 1982). Rule 2, Canon 3(D)(1) of the Code of Judicial Conduct requires a judge to recuse in a proceeding where the judge's impartiality might be questioned. If the record demonstrates a reasonable person would find an appearance of impropriety, the canon compels recusal. *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 698 (Mo.App.1990).

Defendant suggests neither he nor the public could have confidence in the impartiality of Judge O'Malley. Defendant asserts it is "unrealistic" to ask Judge O'Malley to set aside his feelings for the judge who originally sentenced defendant and come to an independent determination of sentencing. Defendant does not suggest and nothing in the record reflects any special relationship between Judge O'Malley and the sentencing judge. Defendant asserts Judge O'Malley cannot be impartial simply because he and the original trial judge were from the same circuit. As previously discussed, Judge O'Malley's knowledge of the allegations regarding the original trial judge was limited. Judge O'Malley was serving as a juvenile division judge when the allegation arose. Judge O'Malley indicated if he had any predisposition regarding sentencing or any prejudice he would recuse because this would be a "moral issue" for him. Judge O'Malley also stated he would consider the full range of punishment and no sentencing decision would be made until he heard all of the evidence. The fact defendant made an allegation the original judge had been drinking is insufficient, by itself, to require Judge O'Malley to recuse.

■ Defendant also suggests because Judge O'Malley "was so insistent on not letting go" of defendant's case this negates an appearance of impartiality. Defendant asserts this insistence is demonstrated by

Judge O'Malley's refusal to consider the recusal issue until he heard argument from the State. It is neither improper nor does it demonstrate a disqualifying bias and prejudice for a judge to want to hear arguments from both parties regarding an issue.

Defendant also contends Judge O'Malley engaged in "secret" meetings to have himself reappointed to the case after this Court appointed Judge Webber. There is no evidence other than defendant's assertion "secret" meetings ever occurred. Even assuming meetings took place, there is nothing improper for the judges hearing Michael Taylor's and defendant's cases to discuss the recusal issue. Judge O'Malley did not err by denying defendant's motion to disqualify.

Defendant cites *Nichols v. Alley,* 71 F.3d 347 (10th Cir.1995), in support of his argument. In that case, both defendants charged with the Oklahoma City bombing sought recusal of the district court judge. *Nichols,* 71 F.3d at 350. The court held pursuant to 28 U.S.C. § 455(a) the question was whether a reasonable person, knowing all relevant facts, would harbor doubts about the judge's impartiality. *Id.* at 350–51. The court noted the extraordinary facts of the case. The bombing killed 169 people and injured many others. The blast caused significant damage to the courthouse, including the judge's courtroom and chambers. A member of the judge's staff was injured as well as other court personnel and their families. Based on these "extraordinary" circumstances, the court concluded the judge's impartiality might reasonably be questioned. *Id.* at 352.

The facts of the present case are clearly distinguishable from those found in *Nichols.* Although the present case involves a unique allegation against the original judge, the effect, if any, on Judge O'Malley resulting from the alcohol allegation is far less as opposed to the effect on the district court judge resulting from the bombing. As previously discussed, defendant does not suggest and the record does not reflect any special relationship between Judge O'Malley and the original judge, other than both judges being from

the same judicial circuit. The extraordinary circumstances in *Nichols* are simply not present in this case. Defendant's first point is denied.

### III.

In his second point, defendant argues Judge O'Malley erred by refusing to permit him to withdraw his guilty plea. Defendant's motion filed pursuant to Rule 29.07(d) to withdraw his plea was overruled after an evidentiary hearing. Defendant contends it is unfair and unjust for him to be sentenced by any judge other than the original trial judge to whom he entered his guilty plea.

The State does not address the merits of defendant's argument but asserts two reasons why the argument should not be considered. The State first contends this Court's summary order and mandate, issued after defendant's first appeal, prevented Judge O'Malley from considering defendant's argument. After a case is remanded, proceedings in the trial court should be in accordance with the mandate and result contemplated by the language of the written opinion. *Frost v. Liberty Mut. Ins. Co.,* 813 S.W.2d 302, 304–05 (Mo. banc 1991). The summary order provided "Judgment vacated. Cause remanded for new penalty hearing, imposition of sentence, and entry of new judgment." According to the State, by the terms of this order, Judge O'Malley was limited to resentencing defendant.

Defendant's first 24.035 motion contained troubling allegations regarding the original trial judge. This Court, as a matter of discretion, declined to issue a written opinion. By remanding for a new penalty hearing and imposition of sentence, certain allegations regarding the original trial judge were rendered moot. The order vacated the judgment and did not affirm any portion of the judgment, including the plea. Accordingly, Judge O'Malley could consider defendant's 29.07 motion. In addition, the order did not reverse the plea. This is demonstrated by this Court specifically remanding for a new penalty hearing and imposition of sentence but not a new plea hearing.

The State also contends, correctly, defendant's argument on appeal regarding withdrawal of his guilty plea is different than the arguments presented in his Rule 29.07 motion. Defendant did raise his present argument in his notice of writ filed on March 30, 1994. However, Judge O'Malley had by that time already ruled on defendant's 29.07 motion. Accordingly, review of defendant's argument is for plain error. Rule 30.20. Under plain error review, for defendant to prevail manifest injustice or a miscarriage of justice must have resulted from the alleged error. *Id.*

Defendant argues he purposefully chose to plead guilty and be sentenced by the original judge and it is unfair and unjust to permit another judge to sentence him. If a defendant is misled or induced to enter a plea of guilty by fraud, mistake, misapprehension, coercion, duress or fear, then the defendant should be permitted to withdraw the plea. *Latham v. State,* 439 S.W.2d 737, 739 (Mo.1969). In a jury-tried case, this Court held a judge who did not preside at the trial could sentence the defendant. *State v. Tettamble,* 450 S.W.2d 191, 193 (Mo.1970). This Court looked to the fact the record demonstrated the sentencing judge's familiarity with the trial transcript. *Id.* However, the issue of sentencing by a different judge after a guilty plea has not specifically been addressed by this Court.

Defendant relies primarily on Judge Kennedy's dissent in *King v. State,* 615 S.W.2d 69, 75–78 (Mo.App.1980), and *People v. Arbuckle,* 22 Cal.3d 749, 150 Cal.Rptr. 778, 587 P.2d 220 (1978). In *Arbuckle,* the defendant argued an implicit term of his plea bargain was the judge to whom he pleaded guilty would sentence him. *Arbuckle,* 150 Cal.Rptr. at 782, 587 P.2d at 224. The court stated "[a]s a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sen-

tence will be imposed by that judge." *Id.* at 782–83, 587 P.2d at 224–25. The court reasoned the propensity regarding sentencing by a particular judge was an inherently significant factor in a defendant's decision to plead guilty. *Id.* at 783, 587 P.2d at 225. The court ultimately held the defendant was entitled to be sentenced by the original judge or, if internal court administrative practices rendered it impossible, then in the alternative the defendant was entitled to withdraw his plea. *Id.*[3]

The holding in *Arbuckle* is not persuasive. The California courts have engrafted exceptions to the general principle expressed in *Arbuckle. People v. Strunk,* 31 Cal.App.4th 265, 36 Cal.Rptr.2d 868, 874 n. 13 (1995); *People v. Dunn,* 176 Cal.App.3d 572, 222 Cal.Rptr. 273, 274–75 (1986); *People v. Watson,* 129 Cal.App.3d 5, 180 Cal.Rptr. 759, 760–61 (1982).

In *Strunk,* the court found a condition of the application of *Arbuckle* was there had to be a plea bargain that had been accepted by the trial court. *Strunk,* 36 Cal.Rptr.2d at 874 n. 13. The court in *Dunn* addressed the application of *Arbuckle* where the judge to whom the defendant pleaded guilty retired before the defendant was sentenced. The court stated "it is clear to us that a negotiated plea does not carry with it an implied promise that the judge accepting the plea will not resign, retire, expire or be removed from the bench pending imposition of sentence." *Dunn,* 222 Cal.Rptr. at 275; *See also Watson,* 180 Cal.Rptr. at 760–61. The court reasoned there was no good reason for the "People" "to bear the risk" when the judge to whom a defendant pleads guilty is no longer vested with judicial power to pass sentence. *Id.*

Defendant in the present case did not plead guilty as part of a plea bargain. Defendant knew when he entered his plea the State would not be giving a recommendation as to sentencing. Furthermore, the unavail-

---

**3.** The *Arbuckle* rationale was applied to juvenile proceedings. *In re Ray O.,* 97 Cal.App.3d 136,

158 Cal.Rptr. 550, 551 (1979).

ability of the original judge was not due to an internal administrative court practice. The original judge properly recused when defendant made the alcohol allegation. The State "should not bear the risk" when the judge to whom defendant pleaded guilty no longer has the power to impose sentence. *Dunn*, 222 Cal.Rptr. at 275. The holding in *Arbuckle* is not persuasive, given the facts of this case.[4]

In *King*, the judge to whom the defendant pleaded guilty died prior to sentencing. At the beginning of proceedings before the new judge, the defendant sought to withdraw his plea because the first judge promised his sentence would be no more than thirty years and because the first judge died "he would just like to change his plea." *King*, 615 S.W.2d at 71. The majority stated the defendant's contention for withdrawing his plea was his belief the sentence would not exceed thirty years. The majority held the guilty plea transcript refuted defendant's contention regarding the amount of sentence and affirmed the conviction. *Id.* at 72.

In his dissent, Judge Kennedy recognized a defendant "waives the whole panoply of constitutional rights" by pleading guilty. *Id.* at 76. Judge Kennedy also reasoned a defendant and counsel will consider the disposition of the sentencing judge when considering a guilty plea. Judge Kennedy stated, "as the court said in *Arbuckle*, sentencing by the judge before whom the guilty plea is entered is an implied term of every *plea bargain,* unless the contrary can be shown." *Id.* at 77. Judge Kennedy further stated, "[w]here a defendant enters a plea of guilty before one judge, and another is substituted without his consent, the defendant should be permitted upon his request to withdraw his plea of guilty." *Id.*

The reasons given by Judge Kennedy for his decision are well-taken. Defendants give up several constitutional rights by pleading guilty. "A plea of guilty to a criminal offense is a solemn act requiring care and discernment." *Hunter*, 840 S.W.2d at 861. Additionally, lawyers and defendants inquire of the reputation of a particular judge. But certain jurisdictions considering the issue have found the determining factor was whether the sentencing judge was familiar with the prior proceedings. *People v. Pierce*, 158 Mich.App. 113, 404 N.W.2d 230, 231 (1987); *People v. Gomez*, 103 Misc.2d 352, 425 N.Y.S.2d 776, 778 (N.Y.Co.Ct.1980); *State v. Carson*, 597 P.2d 862, 865 (Utah 1979).

 It is preferable for the judge to whom defendant pleads guilty to also sentence defendant. *Id.* The reason for this preference is to ensure the judge who heard the evidence at the plea hearing will sentence defendant based upon the circumstances established at the time of the plea. *Pierce*, 404 N.W.2d at 231. A judge could be considering sentencing for dozens of defendants who pleaded guilty, particularly in Missouri judicial circuits with criminal bulk divisions. Courts must continue to function despite the unavailability of a particular judge. *Tettamble*, 450 S.W.2d at 193.[5] Judge Kennedy's dissent notwithstanding, a defendant should not be permitted under all circumstances to withdraw a guilty plea when the original judge is unavailable for sentencing. The dispositive factor should be whether the sentencing judge is familiar with the prior proceedings to permit an informed sentencing decision. Although not a case involving a guilty plea, this Court's decision in *Tettamble* is consistent with this holding.

---

**4.** Defendant's reliance on *Schellert v. State*, 569 S.W.2d 735 (Mo. banc 1978), is also misplaced. In that case, this Court held a trial court should permit a defendant to withdraw a guilty plea when the court decides not to grant the sentencing concessions contemplated by the plea bargain. *Schellert*, 569 S.W.2d at 737.

**5.** In his dissent, Judge Kennedy stated *Tettamble* and *State v. Davis*, 564 S.W.2d 876 (Mo. banc 1978), "are not in point for they do not deal with guilty pleas." *King*, 615 S.W.2d at 77. Those

two cases address "substitution of judges during the course of criminal proceedings upon not-guilty pleas and jury-tried cases. In *Davis*, the substitution took place during the course of the trial, and the substitution was held to be reversible error." *Id.* As previously stated the issue has not been specifically addressed by this Court, but substitution of a judge after a verdict is rendered is more analogous to the issue presented here than substitution of a judge during trial.

The record reflects Judge O'Malley was very familiar with the prior proceedings. This is demonstrated by Judge O'Malley's findings for defendant's sentence and Rule 24.035 motion. Under the circumstances presented here, not permitting defendant to withdraw his plea does not result in manifest injustice or a miscarriage of justice.[6] Defendant's second point is denied.

## IV.

■■■■ Defendant next argues Judge O'Malley erred by finding certain claims in his second Rule 24.035 motion were barred by the doctrine of collateral estoppel. The doctrine of collateral estoppel means "when an issue of ultimate fact has been determined by a valid judgment, it may not again be litigated between the same parties." *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. banc 1991). In deciding whether collateral estoppel applies, the following four factors are considered: (1) is the issue in the present case identical to the issue decided in the prior adjudication; (2) was there a judgment on the merits in the prior adjudication; (3) is the party against whom collateral estoppel asserted the same party or in privity with a party in the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in the prior suit. *Id.* The doctrine applies only to those issues that were necessarily and unambiguously decided. *Id.* at 501.

■■■■ After defendant's first appeal, this Court vacated the judgment in its summary order. When an appellate court vacates a judgment, the lower court's judgment cannot be considered a final judgment on the merits for purposes of collateral estoppel.

*See Ogle v. Guardsman Ins. Co.*, 701 S.W.2d 469, 471 (Mo.App.1985). In the present case, there was not a final judgment on the merits for purposes of collateral estoppel; therefore, the doctrine did not preclude any of defendant's claims.

■■■■ Judge O'Malley did provide sufficient additional findings for ten of defendant's claims to permit appellate review.[7] *Flood v. State*, 876 S.W.2d 800, 801 (Mo.App. 1994). A defendant bears the burden of proving grounds for relief asserted in the motion by a preponderance of the evidence. Rule 24.035(h). Appellate review of the trial court's ruling is limited to determining whether the court's findings and conclusions are clearly erroneous. Rule 24.035(j). The trial court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made. *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).[8]

■■■■ Defendant alleged his counsel rendered ineffective assistance by failing to call Dr. William Logan, a psychiatrist, who had performed certain work on defendant's case. To prove ineffective assistance of counsel, a defendant must show counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and defendant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Moreover, a defen-

---

6. *See U.S. v. Russell*, 776 F.2d 955, 956–59 (11th Cir.1985); *U.S. v. Pizzo*, 453 F.2d 1063, 1064–65 (3d Cir.), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *State v. Russo*, 262 N.J.Super. 367, 621 A.2d 50, 54 (1993); *State v. Degree*, 110 N.C.App. 638, 430 S.E.2d 491, 493–94 (1993); *Benjamin v. State*, 874 S.W.2d 132, 134 (Tex.App.1994); *State v. Manning*, 141 Vt. 192, 446 A.2d 775, 776–78 (1982).

7. These claims are numbered 3(d), 3(e), 3(g), 4, 5, 6, 7, 14, 16 and 18 in defendant's amended motion.

8. Defendant does not argue the additional findings for the ten claims were clearly erroneous.

dant must overcome the presumption counsel is competent and counsel's actions might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065. Finally, a court need not determine the first component regarding counsel's performance before examining for prejudice. If it is easier to do so, a claim may be disposed of for lack of sufficient prejudice. *Ervin,* 835 S.W.2d at 929.

■ Judge O'Malley found Dr. Logan's testimony by deposition was part of the record, entered into evidence and was considered. Defendant failed to offer any evidence regarding how Dr. Logan's live testimony, as opposed to deposition, resulted in any prejudice. Judge O'Malley's finding defendant was not prejudiced by counsel's failure to call Dr. Logan is not clearly erroneous.

■ Defendant also alleged counsel rendered ineffective assistance by failing to pursue expert neurological consultation and testimony. In this claim, defendant also alleged an MRI test was recommended but was never done. During the evidentiary hearing, counsel testified based on discussions with defendant, review of the affidavits and discussion with defendant's family there was no indication of brain damage or that an MRI was needed. Counsel stated he was able to communicate with defendant. Counsel also testified none of the psychologists who were consulted recommended an MRI. Defendant also failed to present any evidence an MRI was recommended. Judge O'Malley's finding the offering of this evidence was speculative as to aiding defendant is not clearly erroneous.

■ In three claims, defendant made similar allegations his counsel during the guilty plea rendered ineffective assistance by failing to advise him of the statutory right regarding jury sentencing and to make sure this right was clearly waived. Except by agreement by the State and the court, a defendant who pleads guilty is not permitted to a trial by jury on the issue of punishment. § 565.006.2, RSMo 1986. Here, the State did not agree to permit a jury trial for punish-

ment. In addition, it was reasonable trial strategy for counsel to have determined sentencing by the court was preferred to sentencing by a jury, given the nature of the crimes. Defendant did not have the statutory right at issue; therefore, his claims fail.

■ Defendant alleged he was denied his constitutional right to trial by jury. Rule 27.01(b) provides a criminal defendant may waive a trial by jury and submit the case to the court with its assent. Under the Constitution and Rule 27.01(b), defendant's waiver and the court's assent "must appear from the record with unmistakable clarity." *State v. Bibb,* 702 S.W.2d 462, 466 (Mo. banc 1985). Judge O'Malley found defendant waived his right to trial by jury when he pleaded guilty. Defendant testified at his plea hearing he understood he had a right to a jury trial and he was waiving the right. The trial judge also assented to defendant's waiver of his right to jury trial. Judge O'Malley's finding is not clearly erroneous.

■ Defendant also alleged the record does not demonstrate he wanted to waive his right to trial by jury for sentencing. As previously discussed, defendant did not have a statutory right to a jury trial for sentencing except by agreement with the State and the court. § 565.006.2. There is also no constitutional right to have a jury assess punishment. *Hunter,* 840 S.W.2d at 863. In addition, defendant testified at his plea hearing he knew he was waiving any right he may have to be sentenced by a jury. Defendant also testified he knew the court would be sentencing him. Defendant's claim fails. *Id.* at 863–64.

■ Defendant alleged his constitutional rights were violated because limitations were placed on the mitigating circumstances considered. Defendant claimed he suffered extreme mental and emotional disturbance, his participation in the crimes was relatively minor, he acted under extreme duress and substantial domination and his capacity was substantially impaired. Pursuant to § 565.032.3, these claims constitute statutory mitigating

circumstances. Review of the record reveals defendant presented evidence on these issues. There is also nothing indicating evidence on these issues was barred. Defendant did not allege any specific evidence was not considered. Judge O'Malley did not clearly err by finding the record did not reflect defendant's right to present mitigating circumstances was limited.

■ Defendant alleged his constitutional rights were violated by his guilty plea counsel's failure to advise him of the benefit of appellate review. During the plea hearing, defendant testified he understood if he went to trial he could appeal, an attorney would be appointed for any appeal, a transcript would be provided at no cost and the appellate court would review the record for error. Judge O'Malley did not clearly err by finding the guilty plea transcript demonstrated defendant was advised of his appellate rights.

■ In the last claim, defendant alleged Missouri's death penalty statute and its application violates his constitutional rights "including but not limited to his due process and equal protection rights and his right against cruel and unusual punishment." Defendant also alleged counsel rendered ineffective assistance by failing to raise the issue. Defendant's "oft-raised" claim regarding due process, equal protection and cruel and unusual punishment has repeatedly been rejected. *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim. *State v. Six*, 805 S.W.2d 159, 171 (Mo. banc), *cert. denied*, 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991).

The portion of the judgment denying claims 1, 3(a), 3(b), 3(c), 3(i), 3(l), 15 and 17 of defendant's amended motion is reversed. The cause is remanded for additional findings for these claims.

## V.

In his fourth point, defendant argues "Judge O'Malley erred in not finding that Nunley's prior counsel was ineffective." Defendant's point relied on fails to provide the requisite "wherein and why" the rulings are erroneous. *Thummel v. King*, 570 S.W.2d 679, 684–85 (Mo. banc 1978). Defendant cites one case for the principle a criminal defendant is entitled to effective assistance of counsel. Defendant provides no additional citation to authority. Defendant also fails to reference the record or provide legal argument regarding how Judge O'Malley clearly erred in his findings. Review, *ex gratia*, of defendant's claims reflects Judge O'Malley's findings were not clearly erroneous.

■ Defendant alleged counsel failed to obtain a mitigation expert to prepare a "psycho-social" background investigation and to supplement other experts in the case. Defendant's counsel consulted with a mitigation expert and presented evidence of defendant's "psycho-social" history. During the sentencing hearing, expert testimony, defendant's relatives' testimony and documentation were offered to support defendant's claims of mitigation. Judge O'Malley found any evidence from a mitigation expert would have been cumulative. Counsel does not render ineffective assistance by failing to present cumulative evidence. *Shurn*, 866 S.W.2d at 472. The finding is not clearly erroneous.

■ Defendant next alleged counsel failed to investigate his mental state at the time the crimes were committed. Counsel has a duty to make a reasonable investigation of mitigating evidence or to make a reasonable decision such an investigation is unnecessary. *State v. Harris*, 870 S.W.2d 798, 815 (Mo. banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Defendant failed to present any evidence on this issue during his post-conviction evidentiary hearing. By not presenting any evidence on this issue, defendant failed to meet his burden as required under Rule 24.035(h). *State v. Silvey*, 894 S.W.2d 662, 671–72 (Mo. banc 1995). Moreover, there must be some meaningful factual indication defendant's mental state when the crimes were committed was such that it required counsel to investigate.

See *Harris,* 870 S.W.2d at 815. There was no such meaningful factual indication presented here.

■ Defendant also alleged counsel failed to investigate and present evidence of his good behavior while incarcerated. Judge O'Malley found it was unlikely offering this evidence would have changed the result. Given the nature of the crimes, defendant fails to demonstrate the result of the proceedings would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Defendant's next claim is his counsel failed to object to inadmissible evidence and improper conduct by the prosecuting attorneys. In his motion, defendant failed to provide any specific allegations regarding the inadmissible evidence or the actions by the prosecuting attorneys that were improper. Judge O'Malley found the allegation was overbroad and there was no error, violating defendant's rights. This finding is not clearly erroneous. Defendant's claim "[i]rrelevant, immaterial and prejudicial evidence was admitted at the sentencing stage concerning various alleged facts" fails for the same reasons.

In his last claim, defendant alleged counsel failed to object and argue the police failed to examine defendant when he was arrested to determine if he was under the influence of alcohol or drugs. Judge O'Malley's finding that the issue of defendant's alcohol and drug use was thoroughly raised is not clearly erroneous. Defendant also alleged in his last claim counsel failed to conduct an adequate investigation of his mental state, mental capacity, clearness of mind and absence of alcohol or drug influence from the date of the crimes until sentencing. The record reveals defendant failed to meet his burden under Rule 24.035(h). Defendant's fourth point is denied.

## VI.

■ Defendant argues in his fifth point Judge O'Malley erred by refusing to find his constitutional rights were violated when the State took inconsistent positions in his case and Michael Taylor's case. Defendant contends during his sentencing hearing, the State argued he initiated the idea to kill the victim but during Michael Taylor's sentencing hearing the State argued Taylor initiated the idea to kill the victim. Defendant suggests the State's "contradictory arguments" violated Rule 4.1(a) of the Rules of Professional Conduct, which prohibits a lawyer from making a false statement of material fact. Defendant further suggests this "process" violated his constitutional rights but offers no citation to authority or legal argument how his constitutional rights were violated.

Defendant fails to reference the sentencing hearing or any other part of the record. Defendant raised the issue in his 24.035 motion. Review of defendant's sentencing hearing reveals during his opening statement the prosecutor stated an informant would testify defendant decided to kill the girl after his name was stated in front of the girl. The informant testified defendant stated it was his idea to kill the girl because Taylor had used his name.

Defendant fails to demonstrate reversible error. This Court considered a case where the State presented evidence during the guilt phase a person other than the defendant inflicted the mortal wound but during the penalty phase the State presented testimony the defendant inflicted the mortal wound. *State v. Kilgore,* 771 S.W.2d 57, 67 (Mo. banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). In review, *ex gratia,* this Court held no element of fundamental fairness was revealed "however disquieting the inconsistent presentation of evidence might be." *Id.* This Court further held because defendant failed to demonstrate any prejudice, there was no lawful basis to exclude the testimony. *Id.*

Judge O'Malley did not find the statutory aggravating factor defendant "caused or directed another to commit murder in the first degree." § 565.032.2(6), RSMo 1986. Accordingly, defendant fails to demonstrate any

prejudice; therefore, there is no lawful basis to reverse the sentence. In addition, the State is not collaterally estopped from taking inconsistent positions. *State v. Fondren*, 810 S.W.2d 685, 687–88 (Mo.App.1991). Defendant's fifth point is denied.

## VII.

In his final point, defendant argues Judge O'Malley erred by not finding imposition of the death penalty violated his constitutional rights. As discussed for defendant's third point, Missouri's death penalty has been upheld against various constitutional challenges. *Shurn*, 866 S.W.2d at 468. Defendant challenges Missouri's statutory scheme of aggravating and mitigating circumstances. This Court has held Missouri's statutory scheme of aggravating and mitigating circumstances is constitutional. *State v. Whitfield*, 837 S.W.2d 503, 514–15 (Mo. banc 1992).

Pursuant to § 565.035.3, RSMo 1994, this Court must determine: (1) whether the death sentence "was imposed under the influence of passion, prejudice or any other arbitrary factor;" (2) whether the judge's finding of statutory aggravating circumstances is supported by the evidence; and (3) whether the sentence is excessive or disproportionate to similar cases.

There is no evidence defendant's sentence was imposed under the influence of passion, prejudice or any other arbitrary factor.

The finding by Judge O'Malley of five statutory aggravating circumstances as provided in § 565.032.2(4)(7)(10)(11)(12), RSMo 1986, is supported by sufficient evidence. Defendant stopped the car after Taylor stated he wanted to steal the girl's purse. The fifteen-year old victim was kidnapped while waiting for her school bus. Defendant drove the victim to his mother's house and provided lubricant for the rape of the girl. According to defendant, the two men decided to kill the girl after Taylor expressed concern about the girl identifying him. The girl was tied up, placed in the trunk of a car, repeatedly stabbed and left in the trunk to die.

"If the case, taken as a whole, is plainly lacking in circumstances consistent with those in similar cases where the death penalty has been imposed, then a resentencing will be ordered." *State v. Gray*, 887 S.W.2d 369, 389 (Mo. banc 1994), *cert. denied*, — U.S. —, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). The Court has compared similar cases where: (1) defendant murdered the victim for pecuniary gain; (2) the murder was outrageously or wantonly vile, horrible or inhuman; (3) the victim was murdered to avoid arrest; (4) the murder was committed while defendant was engaged in the perpetration or aiding or encouraging another person to perpetrate a felony of rape or kidnapping; or (5) the victim was murdered as a result of her potential status as a witness. *State v. Brown*, 902 S.W.2d 278, 300–01 (Mo. banc), *cert. denied*, — U.S. —, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995); *Gray*, 887 S.W.2d at 389; *State v. Parker*, 886 S.W.2d 908, 934 (Mo. banc 1994), *cert. denied*, — U.S. —, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Ramsey*, 864 S.W.2d 320, 327 (Mo. banc 1993), *cert. denied*, — U.S. —, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *Six*, 805 S.W.2d at 169; *State v. Petary*, 781 S.W.2d 534, 545 (Mo. banc 1989), *vacated and remanded*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *reaffirmed*, 790 S.W.2d 243 (Mo. banc), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *State v. Griffin*, 756 S.W.2d 475, 490 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Lingar*, 726 S.W.2d 728, 741 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); *State v. Mercer*, 618 S.W.2d 1, 10–11 (Mo. banc), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). Considering the crime, the evidence and defendant, the penalty imposed is not excessive or disproportionate to the penalties imposed in similar cases.

## VIII.

The judgment as to defendant's conviction and sentence is affirmed. The judgment as to defendant's amended Rule 24.035 motion

is reversed as to claims 1, 3(a), 3(b), 3(c), 3(i), 3(1), 15 and 17, and the cause is remanded for additional findings and entry of a new judgment on the Rule 24.035 motion as to these claims. In all other respects, the judgment as to defendant's amended Rule 24.035 motion is affirmed.

BENTON, LIMBAUGH, and COVINGTON, JJ., concur.

HOLSTEIN, C.J., dissents in separate opinion filed.

HOFF, Special Judge, and KENNEDY, Senior Judge, concur in opinion of HOLSTEIN, C.J.

PRICE and ROBERTSON, JJ., not sitting.

HOLSTEIN, Chief Justice, dissenting.

I respectfully dissent. My disagreement is with the analysis in Part III of the principal opinion.

This is the second appeal involving the vicious rape and murder of a fifteen-year-old child. Occasionally, the heinousness of a crime, the seeming certainty of the same result if the case is remanded, and the delay occasioned by a second remand tempt one to wink at procedural defects. Nevertheless, the cornerstone of any civilized system of justice is that the rules are applied evenly to everyone, no matter how despicable the crime.

When this case was last before this Court, there were allegations that the original trial judge was impaired by alcohol at the first sentencing. The appeal was disposed of by an order and no opinion was issued as provided in Rule 30.25. The wisdom of issuing an order but no opinion need not be revisited here. But the words used in that order are very significant.

The order consisted of two sentences. They read, "*Judgment* vacated. Cause remanded for new penalty hearing, imposition of sentence, and entry of a *new judgment.*" (emphasis added). The italicized words

make clear what was vacated and what must be done anew. The judgment was vacated and a new judgment was required. A judgment in a criminal case is "the *plea*, the verdict or findings, and the adjudication and sentence." *Rule 29.07(c)* (emphasis added). Words used in our orders should have the same meaning we have given them in our rules. In this case, that would mean the judgment, not in part but in whole, was vacated. That necessarily vacated the plea. Unless the order of remand says otherwise, vacation of a plea of guilty requires a new plea followed by appropriate proceedings consistent with the new plea. In addition, our order required entry of a *new judgment.* That certainly includes a new plea.

After the first remand, Judge O'Malley apparently did not understand that the plea of guilty was vacated. He did not solicit a new plea in order to enter the "new judgment" required by the order. As he put it at the Rule 29.07 hearing, "I do read [the Supreme Court's] order to say however that the plea was reviewed in its entirety and in fact they do uphold the plea, and we are here to proceed with the sentencing phase." There is nothing in the order that indicates this Court reviewed the plea or that the plea was upheld. To the contrary, our order vacated every element of the judgment, including the plea of guilty. The order required entry of a *new* judgment. No part of the old judgment was approved or preserved by our order. Until a plea is entered, the judgment is incomplete. The appeal should be dismissed pending entry of a new plea and proper proceedings pursuant to that plea which result in a final judgment.

Moreover, I am persuaded that this case is controlled by *State v. Davis*, 564 S.W.2d 876 (Mo. banc 1978). There both the state and defendant had rested their cases. The trial judge became ill and was hospitalized. Another judge took the bench, ruled on a motion to suppress identification, ruled on a motion for acquittal at the close of the evidence, determined which instructions should be read to the jury, supervised final argument, received the verdict, and sentenced the

defendant under the then effective second offender act. *§ 556.280, RSMo 1969.* The substitute judge stated that his review of the testimony placed him in a position to rule on pending motions and to conduct the sentencing. Nevertheless, this Court held it reversible error to substitute a judge at that point in the trial without the consent of the defendant. 564 S.W.2d at 878–79. From *Davis*, it appears that not one, but two factors must be established before a judge may be substituted between the hearing of evidence and the sentencing: (1) the sentencing judge must be familiar with the trial record, and (2) the defendant must consent to the substitution.

The principal opinion would distinguish *Davis* by arguing that it involved hearing evidence at trial by one judge, followed by receipt of verdict and sentencing by a second judge.[1] By contrast, this case involves a plea of guilty taken by one judge followed by a sentencing by another judge. However, accepting a plea of guilty is not unlike a trial. The judge taking the plea of guilty must assess whether the plea was intelligent and voluntary and whether the facts admitted or proven and would justify a finding of guilt beyond a reasonable doubt. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970); *Morris v. State*, 482 S.W.2d 459, 460 (Mo.1972); *Rule 24.02(e)*. Those determinations depend in no small part on the credibility of what is said and done at the plea of guilty, even though the "witness" may be the accused.

Applying *Davis*, I would hold that even assuming Judge O'Malley was familiar with the transcript of the plea of guilty proceeding, defendant gave no consent to Judge O'Malley imposing the sentence. The filing of the Rule 29.07(d) motion, as well as the request that Judge O'Malley recuse, refute any notion of consent.

Further, I believe Judge Kennedy was right in *King v. State*, 615 S.W.2d 69 (Mo. App.1980), when he said,

In the decision to enter a plea of guilty to a criminal charge where no definite sentence is agreed upon, every lawyer knows that the disposition of the sentencing judge is a subject of consideration. The likelihood of a harsh or lenient sentence is assessed, the personal philosophy of the judge, as evidenced by punishment meted out in other similar cases, or as gathered from the his casual remarks and other sources is assayed, is he (in the case of a youthful offender) sympathetic toward youth? Does he invite the recommendations of the prosecuting attorney with respect to punishment? If so, does he routinely follow the prosecutor's recommendation? Is the offense a type of which he takes a serious view, or is it of a kind which he treats with less gravity? To what aggravating and mitigating factors does he accord large importance or small? These are questions which any defendant, and any attorney representing a defendant, will closely weigh before he enters, or advises a guilty plea.

615 S.W.2d at 77 (Kennedy, J., dissenting). All the questions posited by Judge Kennedy and many more apply when the potential sentence is death. The sentencing decision in capital cases is not the product of a mathematical formula. Though guided by the existence or absence of aggravating and mitigating circumstances, the often anguishing decision to impose the death penalty is ultimately a discretionary act falling on the shoulders of the trial judge. Every competent lawyer will learn all that he or she can about the propensities and background of a judge before advising a client to plead guilty. When the client's life hangs in the balance, knowledge about the judge will be carefully weighed before advising an accused to proceed with a plea of guilty. Confidence that a plea of guilty is intelligent and voluntary is undermined when a new judge is substituted at sentencing. Because the identity of the judge sentencing the defendant plays such

---

1. To distinguish *Davis* from *State v. Tettamble*, 450 S.W.2d 191 (Mo.1970), based on the substitution of the judge prior to verdict in *Davis* and after verdict in *Tettamble* is a distinction without a difference.

an important role, particularly in a death penalty case, the motion to withdraw the plea of guilty pursuant to Rule 29.07 should have been sustained.

I would hold that when this Court vacated the judgment, that necessarily vacated the plea of guilty. There is now no plea and thus no judgment. Because there is no judgment, this Court has no jurisdiction of the appeal. The appeal should be dismissed until the defendant is permitted to enter a plea of either guilty or not guilty and a completely *new* judgment is entered.

Assuming there is a judgment, I would hold that a defendant must be sentenced by the same judge who heard the plea of guilty absent the existence of the two factors required in *Davis*. Moreover, I believe it is manifestly unjust for a defendant to be forced to persist in a waiver of substantial constitutional right to trial by jury when a plea of guilty is made before one judge, and another judge is substituted at the sentencing without the defendant's consent. I would reverse the judgment.