Elliott J. BOTT, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 30864.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 17, 2011.

Emmett D. Queener, Columbia, MO, for Appellant.

Chris Koster, Attorney General and James B. Farnsworth, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Elliott J. Bott ("Bott") appeals the motion court's denial of his Rule 24.035 [1] motion for post-conviction relief after an evidentiary hearing. We affirm the judgment of the motion court.

### Fact and Procedural Background [2]

On September 11, 1997, Bott was charged by Information with one count of the class C felony of arson in the second degree in violation of section 569.050, RSMo 1994.[3] A guilty plea hearing was held on December 4, 1997, at which Bott, pursuant to a plea agreement, entered an *Alford*[4] plea of guilty to the crime charged. The plea court read the Information to Bott, which stated, in part, that Bott com-

---

1. All rule references are to Missouri Court Rules (2011).

2. Bott previously appealed the order of the motion court dismissing his Rule 24.035 action as moot because he had already completed his sentence and was no longer in custody. *Bott v. State*, 307 S.W.3d 223 (Mo.App. S.D. 2010). This Court reversed, noting that Rule 24.035 did not require Bott be incarcerated in order to obtain relief. *Id.* at 226. The case was remanded to the motion court for entry of findings of fact and conclusions of law in compliance with Rule 24.035. *Id.* We borrow freely from the statement of facts as set forth in *Bott*, without further attribution.

3. All references to statutes are to RSMo 2000, unless otherwise indicated.

4. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which recognized that a defendant could choose to plead guilty, although not admitting actual guilt, when the record strongly supported a finding of guilt and the defendant believed that a plea bargain was in his best interest. In reviewing a motion for post-conviction relief filed pursuant to Rule 24.035, an *Alford* plea is not treated differently than a guilty plea. *Sexton v. State*, 36 S.W.3d 782, 783 n. 2 (Mo.App. S.D.2001).

mitted arson by knowingly damaging a mobile home and that "[Bott] did so by starting a fire." Bott indicated he understood the charge against him. Bott was asked if he had knowingly damaged an inhabitable structure by starting a fire and Bott indicated he could not truthfully say "[he] did it or that [he] did not do it." The State then set out the factual basis for the charge and stated that at the date and time mentioned, Bott was standing outside a mobile home fire and to on-lookers who were trying to fight the fire, he was yelling "let the trailer burn" or words to that effect. Fire investigators investigated the fire and determined the fire had been set. Bott confirmed he believed that based on the State's evidence, he would be convicted at trial such that his entry of an *Alford* plea was in his best interest and he hoped the plea court would accept his plea.

In response to questions posed by plea counsel, Bott testified he had discussed the facts of the case with plea counsel, including various defenses available to Bott such as lesser included misdemeanor offenses of which a jury might find him guilty; that if he successfully completed probation[5] under the suspended imposition of sentence (SIS), the felony conviction would be removed from his record; that the plea entered did not count as a conviction on Bott's record; and that should Bott violate the conditions of his probation, his probation would be revoked and Bott could be sentenced up to seven years in the Missouri Department of Corrections (DOC).

Bott further confirmed that: (1) he understood the rights he was waiving by entering his plea; (2) he was aware the State had the burden of proving his guilt beyond a reasonable doubt if he went to trial; and (3) he was aware of the terms of his plea agreement and agreed with those terms. The plea court then accepted Bott's *Alford* plea, suspended imposition of his sentence, placed him on five years' supervised probation (ending December 2002), and ordered him to make restitution in the amount of $5,500, by making payments of $110 per month beginning January 15, 1998.

On January 25, 2000, a notice of probation violation was filed with the plea court and a warrant was issued for Bott's arrest. On June 8, 2000, the State filed a motion to revoke Bott's probation on the grounds that he had failed to make the required restitution payments. Bott appeared "in person in custody" and waived his right to a probation hearing and admitted to violating his probation. Bott was ordered to continue on probation subject to existing conditions and the additional special conditions, serve 120 days shock incarceration (credit time served), complete a 30–day residential treatment program, and comply with all after-care recommendations.

On April 19, 2001, the plea court's review of Bott's file revealed Bott had failed to make restitution payments and it suspended Bott's probation and issued a show cause order.

On May 10, 2001, Bott failed to comply with other terms of his probation including failing to cooperate with his probation officer; failing to follow a course of good conduct and behavior by not consuming intoxicants; and by making threats against a Franklin County judicial officer. That same day, a warrant was issued for Bott's arrest. On June 7, 2001, the plea court ordered Bott to undergo a mental examination, and on August 27, 2001, that report was filed with the court.

---

**5.** Bott said he understood he would be given a book by his probation officer that would detail all the conditions of his probation.

On October 4, 2001, a probation revocation hearing was held and the matter was taken under advisement. On October 24, 2001, Bott's probation was revoked for threatening officers of the court and consuming alcoholic beverages; he was sentenced to serve five years in the DOC.

On January 2, 2002, Bott filed *a pro se* Rule 24.035 motion for post-conviction relief, which was later amended on December 24, 2002, by appointed counsel. In his amended motion, Bott alleged, *inter alia,* that: (1) his *Alford* plea was involuntarily made because it was not supported by an adequate factual basis; (2) the plea court erred in revoking his probation because his violations occurred during a period in which his probation was suspended; and (3) his *Alford* plea was involuntarily made as a result of plea counsel's misadvice regarding the consequences of being placed on supervised probation.[6]

On May 7, 2009, an evidentiary hearing was held. Bott testified that he was in an engineering program at the University of Missouri Rolla ("UMR"), which involved government contracts and required out-of-state travel. Bott stated that he had discussed matters with plea counsel that did not include the consequences of his plea, but rather the benefit of the SIS, specifically, there would be "no sentence, that I would still be able to travel and continue my life as I normally would." Bott testified that plea counsel advised him "there would be no problem ... [n]o one would know[ ] ... [t]here's no record." Bott indicated he relied on this advice in entering his *Alford* plea.

Bott testified he learned of the travel restrictions and that he could not "go about [his] business" only after he went to the probation office to sign paperwork. Bott further testified he had employment difficulties in that he was fired from one job after the probation office called him there, demoted in another when his employer somehow learned he was a "felon," and refused employment by several other potential employers after background checks revealed he had a felony "on [his] record." It was Bott's understanding that the felony charge "wasn't supposed to be listed anywhere ... no record it ever took place."

On cross-examination, Bott indicated he was "foggy" and that he did not remember having been advised by the plea court of his rights before he rendered his *Alford* plea "until he read it again" in the transcript. Bott admitted the plea court advised him that if he were placed on supervised probation, there would be certain terms and conditions imposed. Bott denied he violated the terms and conditions of his probation and denied he admitted doing so to the court. Bott admitted to undergoing a psychological evaluation where he was diagnosed as bipolar, with a personality disorder. He also admitted to having a "mental evaluation meeting" wherein he told Dr. Byron English that he was an alcoholic. However, Bott denied that being bipolar and an alcoholic had anything to do with the fact he could not keep a job more than twenty or thirty days. At the conclusion of the hearing, the motion court took the matter under advisement.

On August 9, 2010, following this Court's reversal and remand of Bott's Rule 24.035 motion, the motion court entered its "Order" denying Bott's motion. The motion court found that Bott's challenge to the

---

6. On May 18, 2005, a "Time Standard Notice" was sent to the parties that Bott's Rule 24.035 motion had been placed on the court's dismissal docket. On May 26, 2005, a motion was filed with the court to remove Bott's case from the dismissal docket. A hearing date was subsequently scheduled.

factual basis underlying his guilty plea was refuted by the record in which Bott admitted that the State had compiled enough evidence to convict him and subsequently asked the trial court to accept his plea. Additionally, the motion court found the transcript clearly refuted Bott's ineffective assistance of counsel claim. The motion court also found no merit to Bott's claim that his probation was improperly revoked, concluding that Bott had admitted to violating his probation by failing to make regular restitution payments and that irrespective of any other violations, his probation could legitimately be revoked on that basis. This appeal followed.

Bott contends the motion court clearly erred in denying his Rule 24.035 motion because: (1) there was an insufficient factual basis for the plea court to accept Bott's plea as the State failed to establish that Bott started the fire at the mobile home; (2) the plea court did not have statutory authority to revoke Bott's probation in that Bott was not on probation at the time the events upon which his probation was revoked occurred; (3) Bott's plea counsel was ineffective in failing to fully advise Bott of the consequences of the probation and had he been aware of the adverse consequences of probation, he would not have entered the *Alford* plea of guilty; and (4) the plea court failed to enter sufficient specific findings of fact and conclusions of law on Bott's ineffective assistance of counsel claim to enable meaningful appellate review.

The determinative issues on appeal are:

1. Did Bott demonstrate not only that there was an insufficient factual basis before the plea court, but also that such failure deprived him of the actual knowledge of the factual basis for the charge, thereby rendering his plea unknowing and involuntary?

2. Did the plea court have the statutory authority to revoke Bott's probation?

3. Did Bott demonstrate that plea counsel's alleged misadvice rendered his plea involuntary and unknowing?

4. Were the motion court's findings of fact and conclusions of law sufficient to enable meaningful review of Bott's claim of ineffective assistance of counsel?

## Standard of Review

Appellate review of the motion court's denial of post-conviction relief is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k). "The [motion] court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made." *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996). "At a postconviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo.App. E.D. 2010).

### Point I: Factual Basis Sufficient

First, Bott argues the motion court clearly erred in denying his motion in that his plea "was rendered involuntary, unknowing, and unintelligent because there was an insufficient factual basis for the plea court to accept his plea ..." We disagree.

A plea court may not enter judgment on a guilty plea unless it determines there is a factual basis for the plea. Rule 24.02(e). While not constitutionally mandated, the purpose of Rule 24.02(e) is to aid in the constitutionally required deter-

mination that a defendant entered a plea of guilty intelligently and voluntarily. *Chipman v. State*, 274 S.W.3d 468, 472 (Mo.App. S.D.2008).

> Rule 24.02(e) serves as protection for an accused who may appear to be pleading voluntarily and with an understanding of the nature of the charge, but who does so without realizing that his conduct does not actually fall within the charge. In other words, a movant's post-conviction constitutional challenge to the knowingness and voluntariness of his or her guilty plea based upon an insufficient factual basis must not only prove the insufficiency of a factual basis on the record before the plea court, i.e., the lack of compliance with Rule 24.02(e), *but also must demonstrate that such failure deprived him or her of the actual knowledge of the factual basis for the charge, thereby rendering his or her plea unknowing and involuntary and, thus, unconstitutional.*

*Id.* at 472 (internal quotation and citation omitted) (emphasis added).

When a movant who has entered an *Alford* plea asserts there was an insufficient factual basis for the plea, the court necessarily takes into account the fact that with an *Alford* plea there is an explicit refusal to acknowledge guilt; the movant, however, may still have voluntarily, understandingly, and unequivocally made the choice to enter the plea. *O'Neal v. State*, 236 S.W.3d 91, 95–96 (Mo.App. E.D.2007). The record should show the various factual elements necessary to constitute the offense and should show that the movant understood the elements. *Id.* at 95. As with any guilty plea, an *Alford* plea is valid

if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Id.* at 96.

Here, Bott has misconstrued the factual-basis requirement for guilty pleas. Even if we were to assume Bott proved there was an insufficient factual basis on the record before the plea court; i.e., the lack of compliance with Rule 24.02(e), Bott has failed to demonstrate (or even allege) in his argument "that such failure deprived [Bott] of the actual knowledge of the factual basis for the charge, thereby rendering [Bott's] plea unknowing and involuntary and, thus, unconstitutional." *Chipman*, 274 S.W.3d at 472. Further, a review of the record indicates Bott was not deprived of actual knowledge of the factual basis for the charge, and that he demonstrated that actual knowledge on the record. As such, Bott has not demonstrated that any alleged insufficiency in the factual basis before the plea court deprived him of actual knowledge of the factual basis for the charge, rendering his plea unknowing and involuntary. Therefore, Point I is denied.

### Point II: Statutory Authority to Revoke Probation

■ Bott next claims the motion court clearly erred in denying Bott's motion in that the plea court did not have the statutory authority to revoke Bott's probation in that his probation had already been suspended and not reinstated when the subsequent probation violations occurred.[7] While Bott admits on one hand a "suspension is not the same as termination or revocation of probation," Bott argues on the other hand a suspension has the same effect and, thus, this case should be treat-

---

7. Probation revocation challenges are generally not cognizable claims in a Rule 24.035 motion; however, courts have held that a "claim alleging that the circuit court lacked the authority to revoke his probation and exe-

cute his sentence because the probationary period had ended is cognizable in a Rule 24.035 motion." *Andrews v. State*, 282 S.W.3d 372, 376–77 (Mo.App.S.D.2009).

ed analogous to a court revoking probation after a defendant's period of probation has expired. We, however, disagree.

Section 559.036 provides:

If the defendant violates a condition of probation at *any time prior to the expiration or termination of the probation term,* the court may continue him on the existing conditions, with or without modifying or enlarging the conditions or extending the term, or, if such continuation, modification, enlargement or extension is not appropriate, may revoke probation and order that any sentence previously imposed be executed.

§ 559.036.3 (emphasis added). Thus, the plain language of section 559.036 provides a circuit court with the statutory authority to revoke a probationer's probation until the term expires or is terminated; neither had occurred in this case. Because Bott's violations in May 2001 occurred prior to the expiration or termination of his probation term, the motion court had the statutory authority to revoke Bott's probation based on those violations.[8] Point II is denied.

### *Point III: Counsel Not Ineffective*

Bott also claims his plea counsel was ineffective for failing to fully advise Bott of the adverse consequences of probation following his guilty plea and that had Bott been aware of those consequences, he would have insisted on going to trial. We find no merit to Bott's claim.

In order to prevail on a claim of ineffective assistance of counsel, movant must show: "(1) Counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and (2) Counsel's

failure prejudiced Movant." *Rivera v. State,* 106 S.W.3d 635, 638 (Mo.App. S.D. 2003); *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because Bott's conviction resulted from a negotiated plea of guilty, a claim of ineffective assistance of counsel is immaterial except to the extent that it infringes upon the voluntariness and knowledge with which the plea was made. *Moore v. State,* 207 S.W.3d 725, 729 (Mo.App. S.D.2006). Accordingly, Bott must prove by a preponderance of the evidence that, but for plea counsel's unprofessional errors, there is a reasonable probability Bott would have insisted on going to trial instead of pleading guilty. *Id.* "On a claim of ineffective assistance of counsel, the motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed.... " *Id.* (internal quotation and citation omitted).

Here, Bott alleges that his plea counsel misadvised him of the consequences of his *Alford* plea, SIS, and probation. Specifically, Bott alleges his plea counsel said he would have "no problems, no one would know about his plea, and he would have no record." After being released on probation, Bott testified that his probation was listed with the DOC, and that he subsequently struggled with keeping and obtaining employment as a result. Bott further testified that had he known the full consequences of his plea, he would not have entered the plea.

The motion court found that the plea hearing transcript clearly refuted Bott's claims and we agree. First, the plea court explained to Bott the terms and conditions of being placed on probation, including

---

8. While Bott notes in the argument section that the "motion court clearly erred in reaching back to a resolved motion to justify denying [Bott's] Rule 24.035 motion[,]" this issue

was not included in Bott's point relied on and, therefore, preserves nothing for appeal. Rule 84.04(e).

that he: (1) not violate any law or city ordinance; (2) follow a course of good conduct and behavior; (3) completely cooperate with the Division of Probation and Parole and his probation officer; (4) pay costs of this case, including an amount to Crime Victims Compensation Fund; and (5) comply with any other special terms and conditions imposed in his case. Bott further agreed with plea counsel that "while there's a great benefit to not having a conviction on your record when one enters a plea of this nature, at the same time, there is a serious down side should you break any of the conditions of your probation...." Bott specifically explained that he understood his plea agreement to include five years supervised probation, restitution for the mobile home in the amount of $5,500, and that at the end of "successful completion," the charge would not appear on his permanent record. The plea court further inquired if Bott understood that the charge would not appear on his permanent record only if Bott had no further difficulty with the law and paid $5,500 in restitution at a rate of $110 per month; Bott responded he understood. Bott also stated he understood that his probation officer would give him a book that listed in detail all the conditions he must follow. Bott further stated that he understood that if he violated a condition of his probation, that the court could sentence him to seven years in the DOC and up to a $5,000 fine. Again, plea counsel asked Bott if he understood that "while you're getting the benefit of not having a conviction on your record at this time and the possibility of having this taken off your record completely, at the same time, there is a serious sanction hanging over your head that the Court could—should you violate your probation, could sentence you up to the full range of punishment for this offense," and Bott responded he understood.

■ Again, in our review of a claim of ineffective assistance of counsel resulting from a negotiated plea, counsel's conduct is immaterial except to the extent that it infringes upon the voluntariness and knowledge with which the plea was made. Here, the transcript from the plea hearing shows Bott was clearly advised of his rights, the general terms and conditions of being placed on probation, and the potential consequences of failing to comply with these terms—Bott acknowledged that he understood. While the gist of Bott's claim focuses on the fact that plea counsel told him "[n]obody would know[,]" the transcript shows the plea court and plea counsel carefully explained that while there would be no *conviction* on his record while he was on probation, only after "successful completion" was there the possibility of the charge being taken completely off his record. Therefore, Bott has not shown his plea counsel's alleged misadvice rendered his plea involuntary and unknowing. Point III is denied.

### Point IV: Findings of Fact and Conclusions of Law Sufficient

In the alternative, Bott argues the motion court failed to issue sufficient findings of fact and conclusions of law on Bott's claim that plea counsel was ineffective in misadvising Bott of the consequences of his plea to enable meaningful appellate review. Specifically, Bott points to the fact that the "motion court's order held that the transcript refuted [Bott]'s allegation that the *trial court* had misadvised him of the proceedings and his rights." We, however, find this is sufficient to conduct meaningful review in this case because it addresses the issue before us of whether plea counsel's alleged misadvice infringed upon Bott's plea being entered voluntarily and knowingly. As discussed in Point III, the reviewable issue in the

context of a postconviction claim of ineffective assistance of counsel following a negotiated plea is only whether it affected the voluntariness and knowledge with which the plea was made. Because the plea court's explanation to Bott and questioning regarding whether he understood the consequences of the plea in fact refutes any allegation that Bott's plea was entered involuntary or unknowing as a result of plea counsel's alleged misadvice, we find the motion court's findings of fact and conclusions of law sufficient for meaningful review of Bott's ineffective assistance of counsel claim. Point IV denied.

The order of the motion court is affirmed.

BATES and SCOTT, JJ., concur.